HARDWARE MUTUAL CASUALTY CO., APPELLANT, *v.* GALL, APPELLEE.

(No. 654—Decided August 5, 1967.)

*Messrs. Zimmerman & Zimmerman,* for appellant.
*Mr. David W. Carter,* for appellee.

CRAWFORD, P. J. Plaintiff-appellant seeks to obtain from defendant-appellee by replevin a 1964 Pontiac Catalina sport coupe, Serial No. 834P14318. From a judgment for the defendant in the Springfield Municipal Court, plaintiff appeals on questions of law.

The evidence shows that plaintiff-insurer in the month of October 1964, obtained from its insured, an automobile dealer in Michigan, a Michigan certificate of title to the vehicle which the insured had reported stolen on October 13, 1964. On the basis of the Michigan certificate, an Ohio certificate of title was issued to plaintiff on February 14, 1966. It carried the correct Serial No. 834P14318.

On January 2, 1965, defendant, an innocent purchaser for value, obtained possession of the automobile from a Springfield, Ohio, dealer. He thereupon received an Ohio certificate of title which recited an incorrect Serial No. 834P246701.

Mr. Paul W. Gilliland, special agent for the National Automobile Theft Bureau, was called as a witness for the plaintiff. He testified that a metal plate carrying the number appearing on defendant's certificate of title had been riveted to the door post of the car; that this had replaced another, original plate such as is customarily spot welded to the door post by the manufacturer; that this was a false number and did not correspond to the true manufacturer's serial number secretly marked elsewhere on the car; that this true number was the one appearing on the plaintiff's certificate of title; that by checking this true number with the manufacturer, he obtained a key which fitted both the ignition and the door.

He testified that there was also a body plate on top of the fire wall under the hood which he said had been visibly altered; that the purpose of that plate is to furnish certain mechanical information such as style number, body number, trim number and paint number, and that it is not used primarily for identification of the vehicle; that the alteration of this plate indicated to him an attempt to disguise the vehicle.

This testimony stands uncontradicted.

The Ohio Certificate of Motor Vehicle Title Law, Chapter 4505, Revised Code, particularly Section 4505.04, is universally recognized to have as one of its prime purposes the prevention of traffic in stolen automobiles. Unfortunately, the application of these provisions has given rise to considerable perplexity. Fears are expressed from time to time that certain interpretations tend to protect rather than to prevent the evils against which the law is directed.

Frequently referred to in the briefs and in the opinions cited are the landmark case of *Kelley Kar Co.* v. *Finkler* (1951), 155 Ohio St. 541, 44 O. O. 494, 99 N. E. (2d) 665; the case of *Atlantic Finance Co., Inc.*, v. *Fisher* (1962), 173 Ohio St. 387, 19 O. O. 2d 384, 183 N. E. (2d) 135, which was subsequently questioned; and, particularly, the case of *Commercial Credit Corp.* v. *Pottmeyer* (1964), 176 Ohio St. 1, 26 O. O. (2d) 286,

197 N. E. (2d) 343, which overruled the *Atlantic Finance Company case* and distinguished the case of *Gibson* v. *Bolner* (1956), 165 Ohio St. 357, 59 O. O. 467, 135 N. E. (2d) 353.

Defendant relies upon the case of *Commercial Credit Corp.* v. *Pottmeyer, supra* (176 Ohio St. 1), wherein a conditional vendor was denied relief against a bona fide purchaser who held an apparently valid Ohio certificate of title. It is appropriately urged in behalf of plaintiff that that case concerned an encumbance rather than complete title, that the claimant placed the vendee in possession, and that the prevailing certificate of title had derived from an act of fraud, not of out-right theft. However, although unnecessary to the four-to-three decision of the Supreme Court in that case, the fourth paragraph of the syllabus declared:

"4. An Ohio bona fide purchaser of a motor vehicle may be protected whether his Ohio certificate of title resulted from fraudulent representations of a swindler or of a thief."

Nevertheless, the important, and in our opinion, the determinative circumstances in our present case, are that plaintiff's certificate of title is true and correct and specifically identifies the vehicle in question, whereas that of defendant, although obtained previously in Ohio, is false, carrying as it does a fictitious identification number. Plaintiff's certificate of title is true; defendant's, however innocently acquired is false. It is difficult to conceive of any greater encouragement to traffic in stolen automobiles than to recognize a false and fictitious certificate.

The judgment of the Municipal Court will be and hereby is reversed and judgment entered for the plaintiff.

*Judgment reversed.*

SHERER, J., concurs.

KERNS, J., dissenting. It is always difficult to resolve a controversy between two innocent parties.

But the Supreme Court of Ohio has stated without qualification that one cannot prevail in an action in replevin against an innocent purchaser of a motor vehicle who acquired possession in Ohio of such vehicle together with an *apparently* valid

Ohio certificate of title. *Commercial Credit Corp.* v. *Pottmeyer,* 176 Ohio St. 1.

The defendant's certificate of title was apparently valid. The serial number thereon corresponded with the serial number on the vehicle whereas the hidden serial number was known only to the manufacturer. Furthermore, the certificate also carried other identifying nomenclature. See *Royal Industrial Bank of Louisville* v. *Klein,* 92 Ohio App. 309.

There being no honor amongst thieves, I fail to see how the recognition of the rights and equities of an innocent purchaser can give any added encouragement to traffic in stolen automobiles.

In my opinion, the judgment should be affirmed upon the authority of the *Pottmeyer case.*